Welcome ladies and gentlemen. I'm very pleased to be here at Columbia Law School. It's a nice gathering of interested people. Many of you may think of us as a patent court. We are a patent court in the sense that we hear all patent deals from the United States. We are not a patent court, actually, because we hear all kinds of cases, but we are the patent court in the sense that we hear all patent deals. We also hear other kinds of cases, and today is an excellent illustration of that fact. Today we have six cases on our calendar, one from the Court of International Trade here in New York, one from the Court of Federal Claims in Washington, one from the Court of Appeals for Veterans Claims in Washington, and three from the Merit Systems Protection Board, Governor McCoy Appeals, that is also in Washington. The latter three have been submitted on briefs and therefore will not be argued. So if any of you came here thinking that we will hear patent appeals, we're sorry to disappoint you. The calendar was created systematically without any attempt to address certain kinds of deals the way they come at us and to those who hear them. So we will hear today the international trade case, the claims case, and the veterans case. The first case is Samuel Aaron versus the United States, 2006-1591. Mr. Simon. Good morning, Your Honors. Good morning. I'm Joe Simon. I'm the author of the law firm Serco, Simon, Cook & Kane, and I'm here this morning before you on behalf of Plaintiff Appellants, Samuel Aaron, Inc. This is a case of first impression in which the court was called upon to determine the legality of a customs procedure called offline liquidation process. The Court of International Trade below found, on first motions to summary judgment, that customs February 8, 1999, offline liquidation was valid. Plaintiff and Plaintiff failed to time and file a protest within 90 days of the February 8, 1999 date of liquidation. As a result, the court case was dismissed alack of jurisdiction. We believe that the court has erred in four vital areas and thus should be reversed by this court. Firstly, on February 8, 1999, no liquidation of the entries involved period had occurred. As of that date, customs had neither done a prior computation nor had they ascertained the duty due on the entries involved. Mr. Simon, if the court finds that the offline bulletin notice is sufficient notice, would that be enough for the reliquidation of the duties? No, Your Honor. And the reason why I believe it is not is that it is not notice per se. It's sort of like putting a cart before the horse. There must first be a liquidation. Then there is notice. The purpose of the notice, the purpose that notice serves, is that we have at that time, a 90-day statute of limitations to file a protest to object to that liquidation. So that before the mere posting of a liquidation or a date of an entry, without having done the actual liquidation, is a nullity. It doesn't mean anything. Because what happens here is that on February 8, 1999, the customs authorities thought, would believe, that they were going to reliquidate these entries and send out bills and duties. But on that date, there was nothing on record anywhere that would notify anyone that, in fact, something had been done to those entries. Other than they're on this list on a piece of paper that was put in a book that was so different from all notices of liquidation that are treated by customs in the court of New York. Well, it was in the place where such notices normally appear, wasn't it? Yes, Your Honor. And it was labeled, Re-liquidation Increase? Well, it was labeled in the book. But it was not done in the proper format. It was not done in the proper form. As a young man, Your Honor, I have a dubious honor as a young associate to go to the Custom House in those days. And you're not testifying? No, I'm not testifying. I'm just trying to tell you what that system, what that looks like. And I'm qualifying it a little bit because I don't have the same memory today that I had 31 years, 35 years ago when I was doing that. And, in fact, 34 years ago, I appeared before this court when it was the CCPN. So I'm still trying to get this thing right. But what happened then, Your Honor? There was a room in the basement of the Custom House, the Sixth World Trade Center. It was a fairly large room. It had six or eight tables, and it had binders. Binders that would be three or four inches thick with computer printouts. Every binder had a date on it. Those dates were the liquidation dates. So if someone was going to look, they would go into that room, and they would look at that date, at those books. The judge below conceded that the government was administratively sloppy, quote unquote, but concluded that the court could not say that the open notes liquidation of February 8th was legally insufficient. Your Honor, if I may, on those bulletin notices, at that date, it's in the record, that open notice is in the record of, I'm sorry, 007A of the appendix. It is the bulletin notices. And it says, the expense of the bulletin notices. And it says, bulletin notice of liquidation dated February, and the bulletin notice is dated February 8th, 1999. And it has entry time, entry number, date of entry, and a quarter number, and remarks. Also on page 0081 of the joint appendix is a liquidation bulletin, the way customs does it on a regular basis, dated April 30th of 1999. Same year, 150 days later. That bulletin notice, Your Honor, not only gives the entry number, date of entry, etc., tells about the purpose of what was happening, that entry says increased, but it gives something called document auto liquidation. And what's the purpose of that? Well, in 90 days, the auto protest runs from the date of this entry. Do we have that finding here, to which we have to defer, in which we have to defer in the trial court? I don't think so, Your Honor. No, the court went directly to the fact, just look at the fact that on February 8th, there was a liquidation, and then the protest that we filed was more than 90 days after February 8th. There was no jurisdiction, and the court didn't go any further, though all of these records were introduced in the court below. And the purpose of it is that liquidation is not merely customs putting something on the record, posting it in the Customs Office, even if it was done appropriately. It's a combination of things. First, pre-seeing that as a conditional precedent for putting that notice up, that has to be a liquidation that was done. Well, this was a re-liquidation, right? But a re-liquidation, Your Honor, by definition in the statute, is done in the same manner as a liquidation. And a direct report to CFR 159.1, where customs defines for us what a liquidation is, and it says... A final copy... Exactly. That's the first thing that happens, and then the notice of that gets posted, and then 90 days starts to run. But on February... Mr. Simon, excuse me for interrupting, but the offline book notice didn't specifically note that it contained the words, increase applicable to each entry, does it not? That's on page 0012 of the State's 12th and lower court's opinion. It says... Do you know... Yes. Because of February 8th, 1999... Yes. Yes. A bulletin notice of liquidation contains the words re-liquidation and increase. And it was lodged in the customs notice room where all bulletin notices were kept? Yes, but it was not on a customs form. Yes, Your Honor. Yes, but it was not on a customs form 4333. And what says it has to be on a customs form? Customs regulation 159.9E. But isn't that harmless error? It's harmless error from the government standpoint, Your Honor, but if I'm looking at that... Remember, if you go to the slab, you're looking for customs notices of liquidation, and you go into this room, and there's 50 or 100 of these books, and they're all this thick, they're all noticed as customs notices of liquidation, if you would look at that document, if you want to look at the document in the actual document, not those paraphrased in the court, but if you want to look at the document on page 0078, it says bulletin notice of liquidation, right? And it says dated February 8th. But if one looks at an actual customs notice regularly, not off line, it says bulletin notice of entries liquidated, liquidation date, 4-30-99. This document does not say liquidation date. It just says that this document was made on February 8th. But if one is looking at liquidations day in and day out, this document is very, very different from this document, of which there are literally thousands of pages of these documents produced by the Customs Service every year in the Court of New York alone. Now, one of the officials at Customs in New York State, that this document, the February 8th off line document, goes into a book and is one book for the year. These documents, which are the liquidation dates, go one book for the date. So... I'm not clear on that. On April 30th, there is a book. There is a book for April 30th. There will be a book for 30 days. Liquidations only occur on Friday. So it's every seven days. So there's April 30th. Then there will be a book for May 7th. Then there will be a book for May 14th, et cetera, et cetera. And there may be more than one book. There may be two books. And the books are literally a page after page of this type with maybe 20 or 30 entries on them. So one would have to know, number one, that such a thing as an off-line liquidation existed. Your Honor, if I may, there is nothing in the statute, in any of the statutes, there's nothing in the regulations that mentions the word off-line liquidation. The only time there's a mention of off-line liquidation is in Customs Standard Operating Procedures. Mr. Simon, you're into your bubble time. You can use it now or save it or... I'll save that. Go ahead. Mr. Miller. In the Open and Defend practice, the draft book states, was the new state to be sloppy? That's correct. You have to repeat the question. It is the word. The economist has done a great list to explain how complicated this case is. I would not like to explain how simple it is. A quantity of jewelry from Thailand arrived in the United States. The necessary entry paperwork was filed to identify the merchandise, the value of the merchandise, the tariff classification, and the estimated duties. The appellant then deposited an amount of money equivalent to those duties. Customs then liquidated the entries. However, it refunded the money for the jewelry because Customs believed at that point that the jewelry was entitled to be retrieved. Subsequently, Customs realized they made a mistake. The jewelry was not entitled to be retrieved. Therefore, it needed to recoup the money that it had refunded to the appellant. Therefore, it reliquitated the entries, it posted a bulletin notice, and it issued a bill. Was there a minor complication? Absolutely. The evidence in this regard is uncontroversial. Lawrence Ryan, who is the Customs official, indicated that prior to posting the bulletin notice, Customs had received from headquarters a memo indicating that they had to recoup the money that they had refunded on the jewelry from Thailand. How did they know what amount of money that was? They knew it because it was equivalent to the money they had refunded at the liquidation. Consequently, to say that Customs didn't know what amount of money it needed to recoup is erroneous. But did the appellant? I'm sorry? Did the import? Well, the import was the one who provided us with the information. The entry papers were filed by the appellant, in which it indicated what the merchandise was, the value of the merchandise, the tariff classification, and the amount of money it estimated was due. But I don't think there's any dispute that the process, some of the aspects of the process followed here, was different than the process typically followed by Customs, correct? There are differences, right? If you mine the record, you can find subtle little differences, yes. But the basic facts of the case are not disputed. And what happened afterwards, when they filed, didn't this take an enormous amount of time in the review process? Before you got to the Court of International Trade, this was at Customs, and it took Customs a few years to resolve this, correct? There seemed to have been a timeline. Just when you said it was all so simple. Well, in terms of Customs procedures, I mean, it posted the Golden Notice, which is the legal evidence of a liquidation, or in this case, a reliquidation. From that point, the importer had advocated to challenge that liquidation. The importer couldn't do it. Now, based on 19 U.S.C. 1514, that decision is finally inclusive. But why wasn't the regular Golden Notice published instead of the regular Bulletin Notice? Well, it's a regular Bulletin Notice in the sense that it contains the same information as another Bulletin Notice. The only reason why it's called an Offline Bulletin Notice is because it's not generated through the Customs computer, which is how it typically does. In this case, was it generated in the proper format? Absolutely. Comparison of the Offline Bulletin Notice, as it's been called, and the ACS-generated Bulletin Notice, which I believe is the one the appellant was referring to, in the standard form, the information on these forms is identical. They all contain some variation of the phrase Bulletin Notice. They possess the district report, the entry number, the importer's name, the entry date, and remarks. In this case, reliquidation increase. Is there a separate book for the Bulletin Notice to be filed? The Offline Bulletin Notice? Yes. Separate from the regular Bulletin Notice? It's placed in the testimony of customs and it's placed in a folder and it's placed in a designated for making Bulletin Notices available to the public. So if the Bulletin Notice is placed in a separate folder, is that, according to your thinking, sufficient notice at that point in time, even though the importer is looking at the regular Bulletin Notice? Well, that would be... It absolutely is.  The legal sufficiency of the Bulletin Notice is tested based upon whether or not it's placed in the conspicuous place of the customs house. Now, this court, in Frederick Folsom, stated that it wasn't going to use a wooden construction of the term conspicuous, but it was going to say whether or not a prudent importer, exercising reasonable diligence, could find it. How would they label it? I'm sorry? How is the binder labeled? I don't actually know that. Mr. Simon says that the binder was not labeled. However, I would point out that Mr. Simon's affidavit, he went to the customs house two years after the time period in question to look for this Offline Bulletin Notice, and he found it. It was right on the table in the middle of the room. So, it seems that the testimony or the argument of the appellant is that you could only find it if you were looking for it. But that's precisely the point. It's the importer's duty to look for it. And it's also uncontroverted that the procedure for posting the Offline Bulletin Notice in this fashion had been in place since at the least 1974. Are you saying that the notice was equivalent to Customs Form 4333 even though it didn't say Customs Form 4333? Absolutely. Customs Form 4333 is simply the name for a form that contains certain information. As I indicated, the Offline Bulletin Notice contains all the same substantive information that a regular generated notice would contain. And I'd also point out that... Well, the form that the appellant referred to repeatedly as the typical form is also not on the standard form. It's on a slightly different form because it's generated by a computer system. Well, in this case, the reason why Customs deviated from using that specific form was because of the nature of the number of entries that needed to be reliquidated. When Customs realized that the Jew from Thailand wasn't entitled to duty to be dispatched, it was faced with having to reliquidate at least around 1,000 entries that were required. Based upon the way the computer system was set up, they couldn't use the typical format to post a Bulletin Notice, so they used an Offline Bulletin Notice. If this was all so clear and conspicuous, why did the Customs Office feel the need to issue the March 99 Memorandum in fact telling these folks they were going to owe the duties that they had been demanded? Well, at the very least, I would say that that memo was simply a courtesy. The only notice that Customs is obligated to give is the Bulletin Notice. The memo was simply a courtesy. Why was there a need for courtesy? Why was it a courtesy if everyone had received the appropriate notice two months, a month earlier? Well, I don't know if everyone received it. The notice was placed as was required by the Customs Office. So this memo is, in case you missed it the first round, here's what we're doing? Well, it did explain the rationale, yes. But that was too late. I mean, it would have been too late then. No, it would have been too late. And so the clock, you're suggesting, would have necessarily run. Well, the clock was running since February 8th when the Bulletin Notice was posted. I would also point out that, as it is the duty of importers who review the Bulletin Notices, this would perhaps be a different case had the importer gone to the room, seen the Offline Bulletin Notice, and been somehow confused by it. But that's not the evidence. The evidence is they never went there. They never looked at the Offline Bulletin Notice. They were never confused by the fact that there was no Customs Form 4333 on the notice. Wait a minute, I don't understand. So you're saying if they had actually gone, and now they were sitting here and say, we went and we were confused, essentially making the same substantive arguments as they're making here in terms of the discrepancy between the two processes, that would be a different case? It would be a different case, but they would still lose. Would it be harder for you to argue? No, they would have a better argument. However, there's this court's decision in Kohlhafer where the Bulletin Notice incorrectly stated the importer's name, was then crossed out as manually corrected. In that case, the importer challenged it, saying that wasn't a valid Bulletin Notice. And the court said, at the very least, you had to inquire to find out, does this apply to me? So at the very least, the importer has a duty to review the Bulletin Notices, and if there's anything strange about it, at the very least, ask one of the customers, does this apply to me? How difficult would it be for the customer to give the right action notice by mail to the importer? Has that ever been done? I don't know if it has ever been done. However, I don't believe it's necessary. In fact, I believe also in Kohlhafer, the court addressed that very issue because there was an issue in that case whether or not the courtesy notice constituted legal evidence of some kind, and the failure to do it would not trigger or would remove total time. And the court found that posting a Bulletin Notice at the customs house satisfied all the malign factors. That is to say that it doesn't rely on chance to notify the importer. It's placed in a room at the customs house that everyone knows that that's where the Bulletin Notices are posted. It is designed to attract attention. The Bulletin Notice is titled Bulletin Notice and lists the name of the importer, the entry dates, and the entry numbers. That's correct. Well, the term offline is of no legal significance. It was a shorthand used by customs as indicated in the evidence simply to differentiate from the ACS-generated Bulletin Notice, both Bulletin Notices. It's not the same binder as the offline Bulletin Notice. Offline Bulletin Notice, as we understand it, is in a different binder in the same location in a different folder. That is correct. However, I believe that that is really of no importance. And I want to point this court to the case of Frederick Colesdale where the importer argued that the lack of a sign in the lobby somehow made it impossible for them to find a Bulletin Notice. And again, the court said that a prudent importer would ask the information desk where that room is. If the importer goes to the room, presumably they would do it to ask. And in this case, the evidence is that the posting of the offline Bulletin Notice in this fashion had been in place since 1974. I would submit to the court that a prudent importer would know of a procedure that had been in place for decades for posting the offline Bulletin Notice. The statute says that notice should be given pursuant to an electronic data proof-of-change system. That didn't occur, right? Well, the statute actually says to give or transmit. And you're saying how about reading it to mean give pursuant to an electronic data proof-of-change system? Well, I think that that contradicts the plain reading of the statute which says give or transmit which implies an option. You're saying the commas set off the subsequent phrase to modify only transmit not give. Correct, Your Honor. In addition, to read give and transmit as being interchangeable would violate the redundancy rule whereby both these words would mean the same thing and therefore would simply be a no account. What's the difference between give and transmit? Well, customs... You're giving an idea. Yes. Are you transmitting an idea? Well, transmitting implies something additional. I would say that it implies sometimes an electronic aspect to it. Well, that would be redundant with respect to the following. Well, no. The pursuant to an electronic data interchange system is in commas and clearly modifies transmit. And as I indicated in my brief the legislative history bears this out. The statute used to read simply give notice and the or transmit and the rest of that was inserted between that. Do we have to determine how conspicuous bulletin notice provisions would be and what needs to be done in order for those to be conspicuous? If they're at the bottom of the pile or behind some of these drawers that's sufficient? Well, if that were the evidence that would perhaps be a tough case and that is not the evidence. The evidence here is that the notice was placed in the folder as it had been for decades and was placed in the room openly accessible to the public. And there's been no evidence that people have ever went to look for that folder or people's notes. Is that procedure is there a main practice? Yes. It seems to be studying the arcade compared to everything else that the government does now. Well, it's merely the posting of the notice. I mean, how is I mean, Mr. Simon describes the room as large and the books as many and things like that but it's still the notices are there. If you have a difficult time understanding what the cataloging system is then simply ask the customs clerk. I will use the range. I think that the court has a basic duty to inquire if they don't understand and they can't just stand there and look around and say I don't understand this and then walk out. If the court had to go further I would simply ask that they affirm the decision of the trial. Thank you, Mr. Miller. Mr. Simon has the floor. Thank you. Your Honor, just a few quick comments. First of all, it was not true that the form Portfolio Liquidation contained the same information. And I go back to the question of what is the purpose of a liquidation notice. A liquidation posting is to allow an employer to look at the records and find out what customs did. On a regular liquidation notice on a notice of liquidation form 4333 every month, every one of them has a locator which will enable an employer by putting in a certificate asking the clerk I'd like to see this entry that's in this location because there are thousands and thousands of entries. The clerk can go right to that file and pull out that entry because it's in the locator. There is no locator number. There's no way to locate that entry. In addition, Your Honor, I would like to also say that the ascertainment on February 8th was not as stated by my colleague because all the duties that were paid originally were not refunded. And in fact, in one of the entries for Samuel Adams, in addition to the gold jewelry, there was also rubber molds that were also entitled to GSP. Now those rubber molds, GSP was in effect for the rubber molds on June 30th of 1998. So on July 1st, when this law was retroactively made to July 1st, the client actually got back 47 cents for the molds that were on that entry. But we didn't get it back because on February 8th that entry was listed as being, according to the government, they were going to reverse the refund. Which goes to prove the point that in fact they had not done the calculation because had they done the calculation on that entry, my client would have been entitled to the 47 cents plus interest on the refund because one of the items was in fact there. What Customs did was, as a matter of calculation, was say, well, everything that we had given back on three months before, we now want back. That's not a calculation. As a matter of fact, the record shows that that calculation was not done until April 12th. Mr. Ryan said they chose to run what's called a script because there was a thousand entries. Had there been two, somebody could have fiscally gone to the entries and made the correction. But because there was a thousand, they needed more time. And they couldn't do that within the 90 days of the relit. So they said, well, you know what we'll do? We'll just put this in here as a letter, as a list of these are the entries we're going to change and we're going to do it sometime in the future. That future was April 12th. Had they done it February 8th, February 9th, we could have filed a protest against it because we would have been informed. The memo in March, the March memo, all the March memos said you'll be billed later. Well, to an import, a bill means an entry will be liquidated in the future and you will get a bill for the duties that are owed. And in fact, that's exactly what happened. Because on April 30th, they issued a liquidation, a reliquidation of that entry. And within five days of that reliquidation, my client got a bill for that amount. And we then went and looked at the entry and determined what the purpose and what the bills would do. And we then subsequently filed a protest against it. But it was clear. In this case, they took, the government took some regularity. And I just want to make one statement. The famous author, Lewis Carroll, through the looking glass, is not correct, Your Honor, just because the government says they're right, that they are right. They are not right in this case. Is that in the record? No. That's all. I paraphrased that. We'll have to liquidate your argument. We'll have to liquidate your argument. Thank you. Thanks for taking under